1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| MONTRY McNALLY; RUBY BELL; and KENNETH BALES, | CASE NO. 1:09-cv-01184-AWI-SKO |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO AMEND PLEADINGS TO JOIN ADDITIONAL PARTIES AND ADD NEW CLAIMS** |
| v. | |
| EYE DOG FOUNDATION FOR THE BLIND, INC.; EYE DOG FOUNDATION PROFIT SHARING PLAN; GWEN BROWN, an individual, and DOES 1 THROUGH 50, | (Docket No. 84) |
| Defendants. | |
| _____/ | |

## I.   PROCEDURAL AND FACTUAL BACKGROUND

Filed on July 8, 2009, this is an action concerning whether Plaintiffs are entitled to benefits pursuant to the Employment Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1131, *et seq*. Plaintiffs Montry McNally, Ruby Bell, and Kenneth Bales ("Plaintiffs") are the beneficiaries of the estate of Lequita McKay, who was employed by Defendant Eye Dog Foundation for the Blind, Inc. Plaintiffs allege violations of ERISA and several state tort claims, naming Eye Dog Foundation for the Blind, Inc. ("Foundation"), Eye Dog Foundation Profit Sharing Plan ("Profit Sharing Plan"), and Gwen Brown (collectively "Defendants") as Defendants.  (*See* Doc. 17.)

On August 17, 2009, Defendants filed an answer to the complaint in which they repeatedly deny the legal validity "of the Defendant Foundation's purported profit sharing plan and contend that such purported plan was never properly authorized or established by the Foundation but, rather[,] that the purported plan was ostensibly established, directed, dominated, controlled and used for the primary purpose and benefit of the Foundation's founder, Ms. McKay . . . " (Doc. 12 at ¶6.)

On October 23, 2009, the court issued a scheduling order allowing the parties until November 25, 2009, to amend the pleadings, "after which time no further joinder of parties or amendments to pleadings is permitted, except with[] leave of court." (Doc. 16 at ¶3B.) On November 25, 2009, Plaintiffs filed a First Amended Complaint ("FAC"). (Doc. 17.) On December 15, 2009, Defendants filed an answer to the FAC. (Doc. 18.) In the answer to the FAC, Defendants repeatedly stated the following:

> Defendants, on information and belief, deny the legal validity of the Defendant Foundation's purported profit sharing plan and contend that such purported plan was never properly authorized or established by the Foundation but, rather[,] that the purported plan was ostensibly established, directed, dominated, controlled and used for the self-serving and primary purpose, personal benefit and interest of the Foundation's founder Ms. McKay and not in the best interests of the Foundation; Defendants further allege that any contributions to the purported profit sharing plan were not properly authorized by the Foundation.

(Doc. 18 at ¶¶ 2, 7, 9, 10, 11, 16, 17, 19, 20, 21-24, 26-33, 35-41, 43-47, 49-51, 53-54, 56-61, 63-66, 68-73, 76-83.)

On March 16, 2010, Defendants' counsel, the law firm of Rosoff, Schiffres & Barta, filed a motion to withdraw as Defendants' attorneys of record. (Doc. 19.)[1] On April 26, 2010, Defendants' counsel's motion was granted. (Doc. 27.) The Court noted, however, that the Foundation and the Profit Sharing Plan were entity defendants that required representation in federal court and could not proceed pro se. Accordingly, these Defendants were given 60 days to retain counsel or file a status report regarding their intention to obtain counsel. (Doc. 27.)

On May 4, 2010, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction with regard to the Profit Sharing Plan's assets. (Doc. 28.) Defendants did not file an opposition to this motion. (Doc. 32.) On May 28, 2010, Chief Judge Ishii granted Plaintiffs' motion

[1] An amended Motion to Withdraw as Attorney was filed on March 17, 2010. (Doc. 22.)

2

1   for a preliminary injunction.  (Doc. 34.)

2       On June 9, 2010, Defendants' former counsel, Howard Rosoff,[2] filed a certificate of service

3   of the Court's April 26, 2010, order on Defendants that granted his firm's withdrawal as attorneys

4   of record.  (Doc. 36.)  On July 15, 2010, Plaintiffs filed a Request for Entry of Default as to the

5   Foundation, which the Clerk of Court entered on July 15, 2010.  (Docs. 38, 39.)  As grounds for the

6   entry of default, Plaintiffs stated that the Court's April 26, 2010, order required the Foundation to

7   obtain counsel, which it had not done, and, thus, Plaintiffs were entitled to default against it.  (*See*

8   Doc. 38.)

9       On August 12, 2010, a notice of appearance by attorney John Vukmanovic was filed on

10  behalf of Gwen Brown and the Foundation, but not on behalf of the Profit Sharing Plan.  (Doc. 40.)

11      On August 13, 2010, Plaintiffs filed a Motion for Summary Judgment and scheduled a

12  hearing on the motion for September 27, 2010.  (Doc. 41.)  On September 3, 2010, Mr. Vukmanovic

13  filed a "Motion to Withdraw as Attorney of Record for Defendants."  (Doc. 48.)  This motion was

14  deficient in procedural aspects and was denied by the Court.  (Doc. 50.)  On September 8, 2010, Mr.

15  Vukmanovic and Plaintiffs' counsel stipulated to a continuance of the summary judgment motion

16  hearing date until October 12, 2010.  (Doc. 51.)  Mr. Vukmanovic refiled his motion to withdraw

17  as counsel, but Defendants filed a request that the Court substitute in Mr. Ralph Harrison as new

18  counsel of record for Defendants, replacing Mr. Vukmanovic.  This request for substitution was

19  granted.  (Doc. 59.)  Mr. Vukmanovic then withdrew his motion for withdrawal as it was moot in

20  light of the ordered substitution.  (Doc. 60.)

21      On September 24, 2010, Defendants filed a "Motion to Continue [the] Trial and

22  Corresponding Cut-Off and Hearing Dates" and requested that the Court entertain the motion on

23  shortened time.  (Docs. 61, 63.)  The Court granted Defendants' request for an order shortening time

24  and heard the motion on October 6, 2010.  (Doc. 66.)  At the hearing, the Court ordered

25  supplemental briefing from the parties, held the matter over until October 13, 2010, and required the

26  parties to again appear at that time.  (Doc. 71.)

27  _____

28      [2] The docket indicates that the motion was filed under attorney Howard Rosoff's CM/ECF electronic
    account.  However, the filing itself is signed by H. Steven Schiffres.  (*See* Doc. 36.)

1    In Defendants' papers and in oral argument presented to the Court, they asserted that their

2    prior counsel's failure to: (1) propound any discovery, (2) undertake any factual investigation, and

3    (3) notify them of various dates in the case had prevented them from adequately and timely

4    participating in the litigation. (*See* Docs. 67, 70, 72.)  Defendants specifically asserted that they did

5    not receive notice from their former attorney until June 9, 2010, that the Court had granted his

6    withdrawal as attorney of record on April 26, 2010. (Doc. 72 at ¶ 39.)  Further, Defendants stressed

7    that they had been in search of replacement counsel following notice of his withdrawal, but had not

8    been able to secure a referral due, in part, to the complex nature of the ERISA litigation pending

9    against them. (Doc. 72 at ¶¶ 43-54.)  The Court found sufficient diligence on the part of Defendants

10   in seeking replacement counsel, such that some modification of the schedule was warranted.

11   However, the Court also specifically noted one of the strong factors weighing in favor of such a

12   modification was the public policy of adjudicating cases on their merits.  Without an amendment to

13   the schedule, discovery was closed, and the motion for summary judgment hearing was pending,

14   leaving Defendants no time to properly prepare their case.  The Court modified the schedule by

15   allowing a three-month extension of almost all the applicable dates.  The Court issued its order from

16   the bench and requested that the parties file a conforming proposed order. (Doc. 74.)  The parties

17   submitted a proposed order on October 15, 2010, which was signed by the Court on October 18,

18   2010.

19   While Defendants' request for a modification of the scheduling order did include a proposed

20   date for amendment of the pleadings, the Court indicated at the hearing that it was not inclined to

21   grant any amendment to the pleadings that would join parties or add claims given that discovery,

22   purely by virtue of the modification of the schedule,[3] was only open for another three (3) months.

23   Defendants' counsel requested that the Court again consider the request, and the Court granted

24   Defendants until October 18, 2010, to file a motion seeking leave to amend the pleadings for the

25   Court's consideration.

26

27

28   _____

[3] Discovery under the original schedule had already closed by the time Defendants' motion to modify the scheduling conference was filed.

4

1

2    On October 18, 2010, Defendants filed a "First Amended Scheduling Report" seeking leave

3    of Court to file an amended pleading, but also filed a counterclaim.[4]  (*See* Docs. 78, 79, 80.)  The

4    Court struck the filed counterclaim and ordered Defendants to refile their motion to amend the

5    scheduling order and the pleadings and caption the filing as a "motion."  (Doc. 82.)  Defendants

6    refiled their motion on October 20, 2010, as ordered and attached a copy of the proposed

7    counterclaim as an exhibit.  (Doc. 84.)

8    Defendants' proposed counterclaim seeks to join new parties to the action and states five

9    causes of action.  The counterclaim names all Plaintiffs as counter-defendants and purports to add

10   Morgan Stanley Smith Barney and its agent/employee David Young as counter-defendants.  Five

11   causes of action are set forth against all of these counter-defendants, including: (1) breach of

12   fiduciary duty, (2) negligence, (3) unjust enrichment, (4) negligent misrepresentation, and

13   (5) declaratory relief.  (Doc. 84-1.)

14   In general, the basic allegations of the counterclaim assert that Ms. McKay, while alive and

15   acting as the Executive Director of the Foundation "hatched and instituted a plan to benefit well

16   beyond her salary . . . [and] [a]s part of this plan, she hired and employed members of her family and

17   associates to conduct business on behalf of [the] FOUNDATION and thereafter compensated them

18   well beyond that which was reasonable and fair at the expense of [the] FOUNDATION."  (Doc. 84-1

19   at ¶ 17.)  The counterclaim asserts that Ms. McKay initiated the profit sharing and retirement plan

20   without proper authority "through which she and members of her family would be disproportionately

21   compensated."  (Doc. 84-1 at ¶ 18.)  Thereafter, Ms. McKay and Plaintiffs McNally, Bell, and Bales

22   (Ms. McKay's siblings) purportedly began signing checks and depositing funds into the retirement

23   or profit sharing plans.  (Doc. 84-1 at ¶ 19.)  The counterclaim also asserts that Ms. McKay and her

24   siblings designated themselves as beneficiaries under the plan and used Morgan Stanley and its

25   agent/employee David Young, who handled Ms. McKay's personal accounts, to "funnel money into

26

27   _____

[4] Defendants entitled their pleading a "crossclaim."  However, it is properly characterized as a counterclaim;
28   therefore, the Court will refer to it as such.  Fed. R. Civ. P. 13 (counterclaim is a claim for affirmative relief asserted
     by a party against an opposing party).

5

1    the plans."  (Doc. 84-1 at ¶ 20.)

2        On October 28, 2010, Plaintiffs filed an opposition to Defendants' motion to modify the

3    scheduling order and amend their pleadings to include a counterclaim against Plaintiffs and two new

4    parties.  Plaintiffs assert that Defendants' proposed amendment is prejudicial, offered in bad faith,

5    futile, and that Defendants' unduly delayed in seeking the amendment.  (Doc. 86.)[5]  It is this matter

6    that is currently before the Court.

7                              **II.    DISCUSSION**

8    **A.    Legal Standards**

9        **1.    Standard for Amending the Pleadings Under Federal Rule of Civil Procedure
                16(b)**

10       Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling

11   order that limits the time to join other parties, amend the pleadings, complete discovery, and file

12   motions. Fed. R. Civ. P. 16(b)(1)-(3).  Once in place, "[a] schedule may be modified only for good

13   cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The "good cause" requirement of Rule

14   16 primarily considers the diligence of the party seeking the amendment.  *Johnson v. Mammoth*

15   *Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  "The district court may modify the pretrial

16   schedule if it cannot reasonably be met despite the diligence of the party seeking the extension."  *Id.*

17   (internal citation and quotation marks omitted).

18       Good cause may be found to exist where the moving party shows, for example, that it:

19   (1) diligently assisted the court in recommending and creating a workable scheduling order, *see In*

20   *re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d 220, 228 (1st Cir. 1997), (2) is unable to

21   comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable

22   at the time of the scheduling order, *see Johnson*, 975 F.3d at 609, and (3) was diligent in seeking an

23   amendment once the party reasonably knew that it could not comply with the scheduling order, *see*

24   *Eckert Cold Storage, Inc. v. Behl*, 943 F. Supp. 1230, 1233 (E.D. Cal. 1996).  *See Jackson v.*

25   *Laureate, Inc.*, 186 F.R.D. 605, 608 (E.D. Cal. 1999).  "If [the] party was not diligent, the inquiry

26   should end." *Johnson*, 975 F.2d at 609.  If the Court finds that there is good cause to modify the

27

28       _____
           [5] Defendants were granted until November 2, 2010, to file a reply brief but elected not to do so.

                                        6

schedule, the court then turns to Rule 15(a) to determine whether the amendment sought should be granted. *Jackson*, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [*Johnson*], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).").

### 2. Standard for Amendment Under Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15 provides that a party may amend its pleading only by leave of court or by written consent of the adverse party and that leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(1)-(2). The Ninth Circuit has instructed that the policy favoring amendments "is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

The factors commonly considered to determine the propriety of a motion for leave to amend are: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, and (4) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has held that it is the consideration of prejudice to the opposing party that carries the greatest weight. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Absent prejudice, or a strong showing of any of the remaining *Foman* factors, a presumption in favor of granting leave to amend exists under Rule 15(a). *Id.* Further, undue delay alone is insufficient to justify denial of a motion to amend. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Finally, "liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). *Contra Union Pac. R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) ("Amendments seeking to add claims are to be granted more freely than amendments adding parties.").

### B. Analysis

#### 1. Plaintiffs' Request for Judicial Notice

Plaintiffs request that the Court take judicial notice of the fact that: (1) Plaintiffs filed their initial complaint on July 8, 2009; (2) Defendants filed an answer to that complaint on August 17, 2009; and (3) Montry McNally submitted a declaration on October 11, 2010. Defendants filed no

1    objection to this request for judicial notice. The Court finds this request moot. The Court's decision

2    must be based on the entirety of the record before it. The Court is already aware of the pleadings

3    filed in *this* matter – taking judicial notice of events in this docket is superfluous.

4    **2.    No Good Cause to Amend the Scheduling Order**

5    As described above, whether good cause exists to modify a scheduling order rests on whether

6    the party seeking the modification has been diligent. *See Johnson*, 975 F.2d at 609. This is the

7    second time the Court is revisiting a request by Defendants for a modification of the scheduling order

8    in this matter. The original scheduling order in this case was entered on October 23, 2009, and

9    allowed the parties until November 25, 2009, to seek amendment of the pleadings. (*See* Doc. 16.)

10   On September 24, 2010, after the non-expert discovery deadline expired, Defendants filed

11   a motion seeking a modified schedule asserting that, due to changes in counsel during the course of

12   the litigation and prior counsel's negligence in handling the case, their ability to meet the deadlines

13   in the original scheduling order and defend the suit was negatively impacted. As a result, Defendants

14   requested that the Court modify the entire schedule so they could adequately defend the case on the

15   merits, including extending the deadline for the time to file an amended pleading. However, that

16   motion did not identify what amendment to the pleadings was desired, if any, or that Defendants

17   wished to join new parties in the litigation.

18   Ultimately, the Court found good cause to modify the scheduling order to permit the parties

19   additional time for discovery (non-expert discovery was extended until December 13, 2010), provide

20   an extension of the dates to file dispositive and non-dispositive motions, and set a new pre-trial

21   conference date and a trial date. *See generally INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*,

22   815 F.2d 391, 400 (6th Cir. 1987) (while party takes the risk of attorney's incompetence, record may

23   exhibit circumstances where client should not "suffer the ultimate sanction of losing his case without

24   any consideration of the merits because of his attorney's neglect and inattention") (internal citation

25   and quotation marks omitted). As a result of the modification to the scheduling order, essentially

26   all deadlines and scheduling dates were extended approximately three (3) months from the original

27   deadlines, which was the time Defendants' counsel represented was necessary to adequately defend

28   the case.

At the October 13, 2010, hearing on this matter, Defendants requested leave to file a motion to amend their pleadings to include a counterclaim joining additional parties to the litigation and adding causes of action.  Although the Court indicated at the hearing that it was not inclined to grant a motion to amend the pleadings to add parties or claims, the Court granted Defendants leave to file the motion and required Defendants to provide the Court with a copy of the proposed amendment for its consideration.

Defendants assert in their current motion that, as a result of the Court's October 13, 2010, order to extend the schedule an additional three (3) months, "the Court has already made a determination of good cause to continue the hearing and other dates set forth in the Court's Scheduling Order." (Doc. 84 at 2:6-8.)  Further, Defendants assert that, with regard to the propriety of amendment under Rule 15(a), their request to file a counterclaim should be granted because they "do not have a dilatory motive" and the request is not made in bad faith.  (Doc. 84 at 5:21-25.)

Permitting Defendants additional time for discovery and modifying the schedule to provide Defendants with time to present a defense is not tantamount to a finding that there is good cause to allow Defendants, at this late date, to file a counterclaim joining additional parties and adding new claims.  After reviewing the proposed amendment, the Court finds that many of the allegations in the counterclaim relate to facts that were known to Defendants at the time they filed their initial answer and amended answer on August 17, 2009, and December 15, 2009, respectively.  For example, the factual gravamen of the counterclaim is that Ms. McKay created the asserted ERISA plan in question without proper authority, funded it with the Foundation's money, and used her personal account at Morgan Stanley to "funnel" money to herself.  She accomplished this, according to the counterclaim, with the assistance of her siblings, who happen to be her beneficiaries under the plan, and Morgan Stanley and its employee/agent David Young.  In their answer, Defendants denied the legal validity of the plan, asserting the following:

> [the] purported plan was never properly authorized or established by the Foundation but, rather[,] that the purported plan was ostensibly established, directed, dominated, controlled and used for the self-serving and primary purpose, personal benefit and interest of the Foundation's founder Ms. McKay and not in the best interests of the Foundation; Defendants further allege that any contributions to the purported profit sharing plan were not properly authorized by the Foundation.

(Doc. 18 at ¶ 2.)

The answers were filed while Defendants were represented by counsel, and that same attorney continued to represent Defendants for many months after the answers were filed. Any counterclaim based on that known factual predicate should have been filed nearly a year ago.

Moreover, Defendants pointed to their lack of counsel from approximately April 2010 to September 2010 in seeking their initial schedule modification. However, in terms of a schedule modification for the purpose of amending the pleadings to add parties, there was ample time for the counterclaim to have been filed from the beginning of the suit in July 2009 until Defendants' counsel withdrew in March 2010. Further, during the five months of discovery before their counsel withdrew, Defendants had sufficient opportunity to uncover any additional facts regarding Plaintiffs, Morgan Stanley, and David Young's alleged conduct.

Defendants continued complaints about their former attorneys' conduct between July 2009 and March 2010 as affecting their ability to file a counterclaim earlier in the litigation are not convincing. As previously noted, circumstances may exist where client should not "suffer the ultimate sanction of losing his case without any consideration of the merits because of his attorney's neglect and inattention." *INVST Fin. Group, Inc.*, 815 F.2d at 400. That is an exception, however, to the general rule that clients are responsible for the conduct of the attorney that they chose. If their litigation efforts were hampered by their former counsel, Defendants must bear that burden. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (where attorney is selected voluntarily by the client, the client cannot "avoid the consequences of the act or omissions of this freely selected agent").

With only six weeks left remaining under the new discovery deadline, the Court cannot conclude that there is any good cause to modify the litigation schedule yet again to allow Defendants to join new parties and add new claims. *See Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming district court's denial of motion to amend pleadings filed on the eve of the discovery deadline). This is especially so considering that, in their previous request for a modification to the schedule, Defendants represented to the Court only a three-month extension of the deadlines was needed. It is clear that a significantly longer period would be required if additional

parties are added to the action.

### 3.   Propriety of Amendment Under Rule 15

The Court concludes that there is no good cause to allow a modification of the schedule to amend the pleadings in the manner proposed by Defendants.   However, the Court nonetheless analyzes whether, even if good cause to modify the schedule did exist, the proposed amendment could be granted under Rule 15(a).

### a.   Prejudice to the Opposing Party

As consideration of prejudice to the opposing party carries the greatest weight, the Court considers this factor first. *Eminence Capital, LLC*, 316 F.3d at 1052.  Defendants' request to file a counterclaim comes after the November 25, 2009, amendment deadline and the initial September 3, 2010, non-expert discovery deadline expired.  (*See* Doc. 16.)  Pursuant to the modification to the schedule that was granted at the hearing on October 13, 2010, and set forth by order issued on October 18, 2010, non-expert discovery in this matter will now close on December 13, 2010.  Defendants' proposed amendment to join parties is highly prejudicial to the nonmoving parties.  The parties to be joined will have virtually no time to conduct discovery, file any pretrial motions, or otherwise adequately defend their case.  Those parties will be expected to go to trial, under the now modified schedule, on March 15, 2011.  The Court finds this shortened time to be substantially prejudicial to those parties.

Moreover, Plaintiffs would likely suffer substantial prejudice to the degree they would be required to engage in substantial new discovery – which they have little time to perform before December 13, 2010.  *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991) (affirming denial of leave to amend where defendant would have been unreasonably prejudiced by addition of new claims only four months before trial).  Further, Plaintiffs have a Motion for Summary Judgment pending that would almost certainly have to be withdrawn and refiled if the counterclaim against them was filed.  Finally, Plaintiffs would be substantially prejudiced by any further delays in the trial date; allowing the counterclaim to be filed would almost surely induce another motion to modify the schedule from any parties newly added.  This factor weighs very heavily against allowing the proposed amendment.

### b.    Bad Faith in Seeking Amendment

Plaintiffs argue that Defendants are acting in bad faith to secure an amendment merely to delay the litigation.  In support of this, Plaintiffs refer to the declaration of Montry McNally, who states that "[i]t is my honest belief that Defendants, particularly Gwen Brown, seek to profit from the advanced age and failing health of myself and my siblings, by extending the litigation until they literally outlast us and are relieved of any obligation to pay us the assets we are owed." (Doc. 73-2 at ¶ 14.)

The Court finds no objective evidence in the record, other than Plaintiffs' belief, that Defendants are seeking to file a counterclaim in bad faith as an attempt to unnecessarily protract the litigation.  This factor does not weigh against amendment. *See DCD Programs, Ltd.*, 833 F.2d at 187 ("Since there is no evidence in the record which would indicate a wrongful motive, there is no cause to uphold the denial of leave to amend on the basis of bad faith.").

### c.    Undue Delay in Seeking Amendment

Plaintiffs assert that Defendants "knew the facts upon which their proposed Counterclaim is based as early as 2008 and previously included these facts in their Answer to the Complaint filed on August 17, 2009." (Doc. 86 at 5:9-11.)  As discussed above, the Court finds that Defendants' failure to seek leave to file the proposed counterclaim as soon as they knew or had reason to know the facts underlying the counterclaim is the product of undue delay. *See Kaplan v. Rose*, 49 F. 3d 1363, 1370 (9th Cir. 1994) (giving greater weight to undue-delay factor where facts and theories sought to be added were known to moving party early in the litigation).  That Defendants blame their former counsel for the delays does not change the situation. *See Link*, 370 U.S. at 634 ("[E]ach party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.") (internal quotation marks omitted). This factor weighs strongly against allowing the proposed amendment.

### d.    Futility of Amendment

Although the validity of the proposed amendment is not typically considered by courts in deciding whether to grant leave to amend, such leave may be denied if the proposed amendment is futile or subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).  Plaintiffs

assert that Defendants' counterclaim is futile because the claims stated in it are barred by the statute of limitations with respect to Plaintiffs and because the counterclaim does not establish a basis for personal jurisdiction over any additional parties.

Plaintiffs first argue that any conduct related to Ms. McKay is barred by the Statute of Repose which provides that claims against a deceased person must be brought within one year of that persons death pursuant to Cal. Civ. Proc. Code § 366.2.  (Doc. 86 at 7:14-19.)  There is no claim stated in the proposed counterclaim against Ms. McKay.  Whether a claim against Ms. McKay is barred by the statute of limitations is inapposite given the amended pleading proposed.

Plaintiffs next assert that any claim for breach of fiduciary duty against them is barred under ERISA's three-year statute of limitation.  ERISA Section 413(1) bars claims for breach of fiduciary duty if a party does not file an action within six (6) years of the date of the alleged violation, regardless of when the participant actually learns of the breach.  29 U.S.C. § 1113(1).  If a party has actual knowledge of a breach, it has three (3) years to bring its claim, unless it can toll the period by showing fraud or concealment.  *Id*. § 1113(2).  There is no evidence at this point establishing that Defendants had actual knowledge of the alleged breach at the time it occurred; the earliest Defendants claim to have been aware of Plaintiffs' conduct was after the lawsuit was filed in 2009. Further, equitable tolling may apply.  Based on the four corners of the proposed counterclaim, at this stage of the litigation the Court cannot conclude that the claim for breach of fiduciary duties against Plaintiffs would certainly be time-barred under ERISA.

Plaintiffs also argue that any alleged negligence on their part would necessarily have occurred prior to Ms. McKay's death in 2007 when Defendants assert the wrongful conduct took place.  The statute of limitations for negligence is two years under Cal. Civ. Proc. Code § 335.1, and a claim for negligence in 2010 is untimely under the statute.  Defendants, however, explicitly plead that "the ramifications and fallout from MCKAY and PLAINTIFFS' plan did not come to [the Defendants'] attention or knowledge until such time [as] this litigation was filed and [Defendants] began [their] inquiries into the facts and circumstances surrounding [Plaintiffs'] claims."  (Doc. 84-1 at ¶ 37.) Under California law, a cause of action does not accrue until the plaintiff either discovers the injury and its negligent cause or could have discovered the injury and cause through the exercise of

reasonable diligence. *See, e.g., S.F. Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1326 (1995). Based on the language of the counterclaim, the Court cannot conclude definitively that it is time-barred.

As to Defendants' proposed claims for unjust enrichment and negligent misrepresentation against Plaintiffs, Plaintiffs argue that the allegations are vague, making it unclear whether the statute of limitations has run. Here, Defendants allege that they did not know of Plaintiffs' conduct related to the Profit Sharing Plan until the instigation of the litigation. For this reason, the Court cannot conclude that the claims for unjust enrichment and negligence misrepresentation are definitively time-barred.

Plaintiffs also argue that the counterclaim is subject to dismissal because it is too speculative. While this may be a reason to dismiss a complaint pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), that does not make the proposed counterclaim subject to dismissal with prejudice rendering it futile. *See generally Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 842 (9th Cir. 2007) (per curiam) ("[c]oncerns about specificity in a complaint are normally handled by the array of discovery devices available to the defendant").

Plaintiffs also argue that the claim against them for breach of fiduciary duties is barred because they are not fiduciaries of the alleged ERISA plan. ERISA fiduciaries include not only those specifically named in the employee benefit plan, 29 U.S.C. § 1102(a), but also any individual who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," *id*. § 1002(21)(A)(i). Further, the Ninth Circuit has recognized that, where members of an employer's board of directors have responsibility for the appointment and removal of ERISA trustees, those directors are themselves subject to ERISA fiduciary duties, albeit only with respect to trustee selection and retention. *See Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1448-49 (9th Cir. 1989).

The proposed counterclaim contains allegations that Plaintiffs were employees of the Foundation and various Plaintiffs signed checks contributing funds to the Profit Sharing Plan. Defendants also allege that various Plaintiffs were members of the Foundation's board. While

Plaintiffs' employment with the Foundation and participation on the board of directors are disputed by Plaintiffs, the allegations of the counterclaim must be taken as true. *Cf. Hydranautics v. FilmTec Corp.*, 70 F.3d 533, 535 (9th Cir. 1995) (material allegations of complaint are taken as true). Whether it could be established that Plaintiffs had any fiduciary duties, the counterclaim alleges enough facts to infer that they might have such duties by virtue of either being employed by the Foundation or participating on its board.  Thus, it is not entirely clear that Plaintiffs would not be considered fiduciaries under ERISA.

Finally, Plaintiffs argue that it is not clear that the Court has any personal jurisdiction over Morgan Stanley and David Young, the additional parties that the counterclaim seeks to join.  There is nothing that definitively establishes that this Court has no personal jurisdiction over Morgan Stanley and David Young.  Further, personal jurisdiction may be waived, unlike subject matter jurisdiction. Fed. R. Civ. P. 12(h).  This is, therefore, not a basis to conclude that counterclaims against these new parties are futile.

In light of the foregoing, the Court does not find that the counterclaim is futile.  This factor does not weigh against granting Defendants' proposed amendment.

### III.   CONCLUSION

Defendants' request to modify the schedule to file an amended pleading is not supported by good cause.  The facts underlying the courterclaim were, at least in part, known as of August  2009 and perhaps earlier.  There was adequate time, while Defendants were represented by counsel, to investigate or serve discovery to determine any other factual information relative to the counterclaim. The Defendants were not diligent in seeking to amend their pleadings; therefore, the Court finds that no good cause is established to modify the schedule again under Rule 16(b).  Further, even if there were good cause to modify the schedule to allow amendment, the amendment proposed is highly prejudicial to the opposing parties given that discovery is nearly closed and adding new parties at this date will protract the litigation further.  Additionally, any new parties added will have little time to adequately present their case as the trial is less than four (4) months away.  In light of this, the proposed amendment would not be allowed under Rule 15(a) regardless of any good cause to allow an amendment of the pleadings after the deadline to do so expired.  Defendants' motion to modify

1   the schedule to allow amendment of the pleadings is DENIED.

2

3   IT IS SO ORDERED.

4   **Dated:**   **November 15, 2010**                          **/s/ Sheila K. Oberto**
                                                  UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28