1

2

3

4

5

6

7        IN THE UNITED STATES DISTRICT COURT FOR THE

8               EASTERN DISTRICT OF CALIFORNIA

9

10

11   MONTRY MCNALLY; RUBY BELL;     )    1:09-CV-01184  AWI SKO
     and KENNETH BALES,             )
                                    )    ORDER GRANTING IN PART
12           Plaintiffs,            )    AND DENYING IN PART
                                    )    PLAINTIFFS' MOTION FOR
13        v.                        )    SUMMARY JUDGMENT
                                    )
14   EYE DOG FOUNDATION FOR THE     )    [Doc. #108]
     BLIND, INC., EYE DOG           )
15   FOUNDATION PROFIT SHARING      )
     PLAN, GWEN BROWN, an individual,)
16   and DOES 1 through 50,         )
                                    )
17           Defendants.            )
     _____)

18

19                      INTRODUCTION

20        This action concerns whether Plaintiffs Montry McNally, Ruby Bell and Kenneth Bales

21   are entitled to benefits under the Employee Retirement Income Security Act ("ERISA").

22   Plaintiffs are the beneficiaries of the estate of Lequita McKay, Defendant Eye Dog Foundation

23   for the Blind, Inc.'s ("EDF") former employee.  On November 25, 2009, Plaintiffs filed an

24   Amended Complaint against Defendants EDF, EDF Profit Sharing Plan and EDF executive

25   director Gwen Brown.  In their Amended Complaint, Plaintiffs bring claims under ERISA and

26   several state law claims.  On January 14, 2011, Plaintiffs moved for summary judgment on all of

27   their claims.  For the reasons that follow, the motion will be granted in part and denied in part.

28

  
# FACTUAL BACKGROUND[1]

Lequita McKay ("McKay") was employed by Eye Dog Foundation for the Blind, Inc. ("EDF") as its Chief Executive Director.  PUMF 26.  Pursuant to her employment with EDF, McKay was a participant in EDF's Profit Sharing Plan ("the Plan").  PUMF 27.  On October 8, 2006, McKay resigned from EDF.  PUMF 29.[2]  At various times between retirement and the time of her death, McKay requested the immediate distribution of her vested interest in the Plan.  PUMF 30.  No action was taken by EDF to implement McKay's distribution under the Plan.  PUMF 31.[3]

On July 20, 2007, McKay died.  McNally Declaration at ¶ 4, Doc. 108-12 at 2.  Plaintiffs Montry McNally ("McNally"), Ruby Bell ("Bell") and Kenneth Bales ("Bales") are McKay's beneficiaries under the Plan.  PUMF 32.  Since September 2007, Plaintiffs and their counsel made repeated efforts to obtain payment of the benefits accrued under the Plan, but were

---

[1]     "PUMF" refers to Plaintiffs' undisputed material facts.  "DRPUMF" refers to Defendants' response to Plaintiffs' undisputed material facts.

[2]     Defendants admit that McKay resigned her position at EDF, but state that the effective date of her resignation is the subject of dispute.  DRPUMF 29.  Defendants fail to cite to any evidence which supports their denial.

Local Rule 260(b) provides that "[a]ny party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial."  Thus, a fact disputed by a party without a citation to supporting evidence will be deemed admitted.  Beard v. Banks, 548 U.S. 521, 527 (2006); McHenry v. Vong, No. CIV S-03-1573 DFL DAD P, 2006 WL 2067075, at *2 (E.D. Cal. Jul. 24, 2006).

Since Defendants have failed to cite to any evidence in support of their denial, this fact is deemed admitted.  In addition, this blanket denial by Defendants is controverted by Plaintiffs submitting McKay's resignation letter to the EDF Board of Directors, which states that October 8, 2006 is the effective date of her resignation.  McNally Declaration Exhibit B, Doc. 108-13 at 5.

[3]     Defendants deny PUMF 31 without citing to any evidence that supports the denial.  DRPUMF 31.  This fact is deemed admitted.

1  unsuccessful.  PUMF 33.  On October 4, 2007, Plaintiffs formally requested their distribution of

2  McKay's vested interest under the Plan.  PUMF 34.  Defendants did not respond to Plaintiffs'

3  request within ninety days after receipt of the claim.  PUMF 35.[4]

4          On September 16, 2008, Defendant Gwen Brown ("Brown"), who became EDF's

5  Executive Director after McKay's resignation and her subsequent death, wrote a letter to Bell

6  stating that the EDF Board of Directors would not be making any distributions under the Plan

7  and that the request for benefits was being forwarded to an attorney for review and advisement.

8  PUMF 36; see also Hannon Declaration at ¶ 10, Doc. 125-8 at 2.  Other than the September 16,

9  2008 letter from Brown, Defendants ceased all communication with Plaintiffs.  PUMF 37.[5]

10         On April 30, 2009, Plaintiffs' counsel requested information from Defendants relating to

11 the Plan, including a current statement from Morgan Stanley detailing both the total assets which

12 stand in the Plan and the portion of those assets that are allocable to McKay's account.  PUMF

13 45.  Plaintiffs were informed by Defendants' counsel that no information would be forthcoming.

14 PUMF 46.[6]  Subsequently, the present action ensued.

15                                    **LEGAL STANDARD**

16         Summary judgment is appropriate when it is demonstrated that there exists no genuine

17 issue as to any material fact, and that the moving party is entitled to judgment as a matter of

18 law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune

19 v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004); Jung v. FMC Corp., 755

20

21         [4]      Defendants deny PUMF 35 without citing to any evidence that supports the
22 denial.  DRPUMF 35.  This fact is deemed admitted.

23         [5]      Defendants deny PUMF 37 without citing to any evidence that supports the
   denial.  DRPUMF 37.  This fact is deemed admitted.
24
25         [6]      Defendants deny PUMF 46 without citing to any evidence that supports the
   denial.  DRPUMF 46.  Despite denying PUMF 46, Defendants state within DRPUMF 46 that
26 they denied Plaintiffs access to certain documents that were demanded.  Id.  This fact is deemed
   admitted.

27

28                                            3

1    F.2d 708, 710 (9th Cir. 1985).  Where summary judgment requires the court to apply law to

2    undisputed facts, it is a mixed question of law and fact.  Sousa v.Unilab Corp. Class II

3    (Non-Exempt) Members Group Benefit Plan, 252 F. Supp. 2d 1046, 1049 (E.D. Cal. 2002).

4    Where the case turns on a mixed question of law and fact and the only dispute relates to the

5    legal significance of the undisputed facts, the controversy for trial collapses into a question of

6    law that is appropriate for disposition on summary judgment.  Union Sch. Dist. v. Smith, 15

7    F.3d 1519, 1523 (9th Cir. 1994); Sousa, 252 F. Supp. 2d at 1049.

8         Under summary judgment practice, the moving party always bears the initial

9    responsibility of informing the district court of the basis for its motion, and identifying those

10   portions of "the pleadings, depositions, answers to interrogatories, and admissions on file,

11   together with the affidavits, if any," which it believes demonstrate the absence of a genuine

12   issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

13   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

14   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

15   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be

16   entered, after adequate time for discovery and upon motion, against a party who fails to make

17   a showing sufficient to establish the existence of an element essential to that party's case, and

18   on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of

19   proof concerning an essential element of the nonmoving party's case necessarily renders all

20   other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted "so

21   long as whatever is before the district court demonstrates that the standard for entry of

22   summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

23        If a moving party fails to carry its burden of production, then "the non-moving party

24   has no obligation to produce anything, even if the nonmoving party would have the ultimate

25   burden of persuasion."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099,

26

27

28                                              4

1102-03 (9th Cir. 2000).  If the moving party meets it initial burden, the burden then shifts to

the opposing party to establish that a genuine issue as to any material fact actually does exist.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nolan v.

Cleland, 686 F.2d 806, 812 (9th Cir. 1982); Ruffin v. Cnty. of Los Angeles, 607 F.2d 1276,

1280 (9th Cir. 1979).  A fact is "material" if it might affect the outcome of the suit under the

governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co.

v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002).  A "genuine

issue of material fact" arises when the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.  Anderson, 477 U.S. at 248-49; Thrifty Oil, 322 F.3d at 1046.

　　　　　In attempting to establish the existence of a factual dispute, the opposing party may not

rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of

specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11;

First Nat'l Bank, 391 U.S. at 289; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 682 (9th Cir.

2001).  However, the opposing party need not establish a material issue of fact conclusively in

its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge

to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at

290; Hopper v. City of Pasco, 248 F.3d 1067, 1087 (9th Cir. 2001).  Thus, the "purpose of

summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether

there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)

advisory committee's note on 1963 amendments); Mende v. Dun & Bradstreet, Inc., 650 F.2d

129, 132 (9th Cir. 1982).

　　　　　In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c); Fortyune, 364 F.3d at 1079-80.  The evidence of the opposing

1  party is to be believed, and all reasonable inferences that may be drawn from the facts placed

2  before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255;

3  Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir.

4  2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

5  obligation to produce a factual predicate from which the inference may be drawn.  Sousa, 252

6  F. Supp.2d at 1049.

7       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

8  show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at

9  586 (citation omitted).  "Where the record taken as a whole could not lead a rational trier of

10  fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Id. at 587 (citation

11  omitted).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue

12  of material fact, the moving party is entitled to summary judgment.  Nissan Fire & Marine,

13  210 F.3d at 1103.

**DISCUSSION**

14

15  A.       Claim for Benefits Pursuant to ERISA § 502(a)(1)(B)

16       Plaintiffs move for summary judgment on their claim for benefits against all Defendants

17  under ERISA § 502(a)(1)(B).  In the Complaint, Plaintiffs allege that Defendants have violated

18  their duties under ERISA by refusing to pay benefits owed to them under the Plan.  Complaint at

19  ¶ 30.

20       ERISA was enacted to "promote the interests of employees and their beneficiaries in

21  employee benefit plans" and "to protect contractually defined benefits."  Firestone Tire and

22  Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (citations omitted).  ERISA § 502(a)(1)(B)

23  permits ERISA plan beneficiaries to bring a civil action to recover benefits due under the terms

24  of a plan; to enforce rights under the terms of the plan; or to clarify rights to future benefits under

25  the terms of the plan.  See 29 U.S.C. § 1132(a)(1)(B).

26

27

28                                                  6

1.      Plaintiffs' motion for summary judgment on their claim for benefits against
        Brown is DENIED.

The Ninth Circuit has recently clarified that potential liability under ERISA § 502(a)(1)(B) is not limited to only plans and plan administrators.  Cyr v. Reliance Standard Life Ins. Co., 642 F.3d 1202, 1206 (9th Cir. 2011).  In support of their conclusion, the Ninth Circuit cited to ERISA § 502(d)(2), which provides that "[a]ny money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person *unless liability against such person is established in his individual capacity under this subchapter*."  Id. at 1206-07 (emphasis added).  Thus, the Ninth Circuit concluded that the "unless" clause of ERISA § 502(d)(2) "necessarily indicates that parties other than plans can be sued for money damages under other provisions of ERISA . . . as long as that party's individual liability is established."  Id. at 1207.

In their motion for summary judgment, Plaintiffs have not explained or demonstrated how Brown is individually liable for failing to provide benefits under the Plan.  Accordingly, Plaintiffs' motion for summary judgment on its claim for benefits against Brown is DENIED.

2.      Plaintiffs' motion for summary judgment on their claim for benefits against EDF
        and the EDF Profit Sharing Plan is GRANTED.

A district court reviews an ERISA plan administrator's decision to deny benefits *de novo*, unless the plan document grants the administrator discretion to interpret the plan terms and determine eligibility for benefits.  Firestone, 489 U.S. at 115.  If the plan confers discretionary authority, then the standard of review shifts to abuse of discretion.  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006).

While the parties do not address what is the appropriate standard of review, Plaintiffs have provided the Summary Plan Description ("SPD") of the Plan.  Copner Declaration Exhibit C, Doc. 108-20 at 3.  The SPD lists EDF as the Plan Administrator and explicitly states that the

"Plan Administrator has the complete power, in its sole discretion, to determine all questions arising in connection with the administration, interpretation, and application of the Plan[.]"  Id. at 26.  Thus, because the Plan grants EDF discretion, the appropriate standard of review of EDF's denial of benefits is abuse of discretion.

In determining whether the ERISA plan administrator's denial of benefits was an abuse of discretion, the Court must look at whether the denial of benefits was (1) illogical, (2) implausible or (3) without support in inferences that may be drawn from the facts in the record.  Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011).  In addition, procedural errors by the administrator are also "weighed in deciding whether the administrator's decision was an abuse of discretion."  Abatie, 458 F.3d at 972.

The SPD provides that if a participant terminates employment, and subsequently dies before receiving all benefits under the Plan, the participant's beneficiaries are entitled to the vested percentage of the participant's remaining account balance at the time of the participant's death.  Id. at 16.  The death benefit will be paid to the participant's beneficiaries in a single lump-sum payment.  Id.

It is undisputed that McKay was a participant in the Plan.  PUMF 27.  On July 20, 2007, McKay died.  McNally Declaration at ¶ 4, Doc. 108-12 at 2.  Plaintiffs are McKay's beneficiaries under the Plan.  PUMF 32; McNally Declaration Exhibit A, Doc. 108-13 at 3.  After McKay's death, Plaintiffs made repeated efforts to obtain payment of the benefits accrued under the Plan, but were unsuccessful.  PUMF 33.  On October 4, 2007, Plaintiffs formally requested their distribution of McKay's vested interest under the Plan.  PUMF 34; McNally Declaration Exhibit C, Doc. 108-13 at 8.

After Plaintiffs submitted their claim for benefits, there were significant procedural errors by EDF as Plan Administrator.  ERISA requires that every employee benefit plan (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the

1   plan has been denied, setting forth the specific reasons for such denial, written in a manner

2   calculated to be understood by the participant, and (2) afford a reasonable opportunity to any

3   participant whose claim for benefits has been denied for a full and fair review by the appropriate

4   named fiduciary of the decision denying the claim.  See 29 U.S.C. § 1133.

5          Consistent with these ERISA provisions, the SPD provides that a full and fair review will

6   be conducted in the event that a claim for benefits is denied.  Copner Declaration Exhibit B, Doc.

7   108-20 at 20.  If the claim for benefits is wholly or partially denied, the Plan Administrator will

8   provide written or electronic notification of the Plan's adverse determination no later than 90

9   days after receipt of the claim.  Id.  The written or electronic notification must include (1) the

10  specific reason or reasons for the adverse termination; (2) reference to the specific Plan

11  provisions on which the adverse determination is based; (3) a description of any additional

12  material or information necessary to perfect the claim and an explanation of why such material or

13  information is necessary; and (4) appropriate information as to the steps to be taken if the

14  beneficiary wants to submit the claim for review.  Id. at 20-21.

15         EDF failed to respond to Plaintiffs' request for benefits within ninety days after receipt of

16  the claim.  PUMF 35.  EDF did not respond until September 16, 2008, when Brown sent a denial

17  letter to Bell.  Bell declaration Exhibit B, Doc. 108-15 at 5.  Brown's September 16, 2008 denial

18  letter to Bell did not follow the Plan's procedures.  The letter does not reference a specific Plan

19  provision on which the adverse determination is based; identifies no additional material or

20  information necessary to perfect the claim and does not explain why such material or information

21  is necessary; and fails to provide information as to the steps to be taken if the Plaintiffs want to

22  submit the claim for review.

23         With respect to the contents of the letter, Brown informed Plaintiffs that the EDF Board

24  of Directors would not be making any distributions to Plaintiffs under the Plan and that the

25  request for benefits was being forwarded to an attorney for review and advisement.  Id.  The

26

27

28                                              9

stated reasons for denying Plaintiffs' claim for benefits was that (1) the EDF Board of Directors

never passed a resolution to setup the Plan; and (2) McKay removed money from EDF funds to

start the Plan without the EDF Board of Directors approval, knowledge, vote or written

Resolution to start the Plan.  Id.

In light of the substantial procedural errors that occurred and EDF's stated reasons for the

denial of Plaintiffs' claim for benefits, the Court concludes that EDF abused its discretion in

denying Plaintiffs' claim for benefits.  EDF's decision to deny Plaintiffs' claim was illogical,

implausible and without support in inferences that may be drawn from the facts in the record.

Despite denying Plaintiffs' claim for benefits because of alleged improprieties in the

formation and funding of the Plan by McKay, EDF admitted that other employees were allowed

to receive benefits under the Plan after their resignations.  PUMF 13; McTeer declaration Exhibit

C, Doc. 108-6 at 16-17.  In her declaration, Brown states that:

> 26.    EDF did in fact resolve claims for benefits under the Profit Sharing Plan for other
> employees who were done due to the fact that there were less than five (5) such
> claims and each was for an amount less than $2,000.00.

Brown declaration at ¶ 26, Doc. 125-4 at 6.  Brown has further admitted that she is a participant

in the Plan.  PUMF 14; McTeer declaration Exhibit C, Doc. 108-6 at 9.  It is illogical that EDF

would deny Plaintiffs' claim for benefits based on the formation/funding of the Plan, but freely

grant other claims for benefits under the Plan.

Moreover, Plaintiffs have produced substantial evidence that further illustrates

that EDF's denial of Plaintiffs' claim for benefits was an abuse of discretion.  Plaintiffs have

submitted a document entitled "Special Meeting of the Board of Directors of Eye Dog

Foundation" dated June 10, 1997.  Copner declaration Exhibit E, Doc. 108-20 at 36.  The

document states that a meeting was held by EDF's Board of Directors where it was announced

that it was necessary to amend EDF's Profit Sharing Plan.  Id.  The document states that a motion

was made, seconded and unanimously adopted.  Id.  The document is signed by McKay, Bales

10

1   and Michael Hannon ("Hannon").[7]  Id.  Plaintiffs have also produced the EDF Board Resolution

2   that adopted these amendments to the Plan, which was also signed by McKay and Hannon.  Id. at

3   38.[8]  Defendants have not disputed the authenticity of these documents.  In addition, despite

4   submitting a declaration in support of Defendants' opposition in which he states that he was

5   unaware of the Plan, Hannon has not argued that it was not his signature on these documents.

6   Hannon declaration at ¶ 14, Doc. 125-8 at 1.

7          Plaintiffs have also provided authenticated copies of the Plan's 1992, 1993 and 2007

8   Annual Returns/Reports, which were provided by the Department of Labor.  McTeer declaration

9   Exhibit A, Doc. 108-4 at 2, 18, 26.  Brown signed the 2007 Annual Return/Report under penalty

10  of perjury.  Id. at 28.  Brown signed the document as Plan Administrator and on behalf of EDF as

11  the employer/plan sponsor.  Id.  In addition, during discovery, EDF authenticated various

12  financial information related to the Plan, including the "Financial Information-Small Plan" for

13  the fiscal year beginning 05/01/06 and ending 04/30/07 and for fiscal year beginning 05/01/07

14  and 04/30/08.  PUMF 10.  EDF also admitted that on November 24, 2009, it filed an Application

15  for Extension of Time to File Certain Employee Plan Returns for the Plan for fiscal year

16  beginning 05/01/2008 through 04/30/2009.  PUMF 12.  The record establishes that the denial of

17  Plaintiffs' claim was nonsensical in light of the evidence that shows EDF amended the Plan, paid

18  out claims under the Plan, and paid taxes on the Plan.

19

20

21

22          [7]      Hannon is not a party in this case.  Hannon submitted a declaration in support of
    Defendants' opposition to Plaintiffs' motion for summary judgment.  In his declaration, Hannon
23  states: "I was and am employed with Eye Dog Foundation for the Blind, Inc., as a member of its
    Board of Directors and served in this capacity during the tenure of Ms. Lequita McKay.  Hannon
24  declaration at ¶ 2, Doc. 125-8 at 1.

25          [8]      Retirement Plan Consultants, third party administrator of the Plan, also provided
26  the Board Resolution adopting the amendments to the Plan.  PUMF 4.

27

28                                                11

1    In the opposition, Defendants contend that summary judgment is inappropriate because

2  there are triable issues of fact with respect to the formation, funding and administration of the

3  Plan by McKay.[9]  In their attempt to establish a triable issue of fact, the only evidence

4  Defendants cite to in their opposition is the declaration of Michael Brucker ("Brucker").

5  Opposition at 9 n.4.[10]  Brucker is an attorney and was hired by EDF as an expert on employee

6  benefits law.  Brucker declaration, Doc. 125-3 at 1.  Brucker was hired by EDF so he could offer

7  his opinion about the establishment, administration and management of the Plan.  Id. at 1-2.

8    With respect to whether the Plan was validly formed by EDF, Brucker states:

9      18.    Based on my review of the Board of Directors minutes provided to me, I have
       concluded that there are no written resolutions of the Board of Directors, either pursuant
10     to a duly noticed special meeting, a regularly scheduled meeting or an action without a
       meeting by written consent of a majority of the Board members, pursuant to which the
11     Board of Directors of the Foundation authorized the initial adoption of the Plan and Trust.
       Therefore, it is my opinion that the Board of Directors of the Foundation did not properly
12     establish the Plan and Trust.

13  Id. at 9.  Brucker concludes that the EDF Board of Directors did not properly establish the Plan

14  based on the Board of Directors meeting minutes that were provided to him by EDF.  However,

15  Brucker's conclusion is unreliable because it is not factually supported.  Brucker does not

16  establish that he has been provided with all minutes of every EDF Board meeting.  Moreover,

17  Brucker's conclusion relies on (1) Exhibit C, a copy of the EDF by-laws; (2) Exhibit F-1,

18  February 25, 1993 EDF meeting minutes; (3) Exhibit F-2, June 7, 1996 EDF Board Resolution;

19  (4) Exhibit F-3, June 10, 1997 document titled "Special meeting of the Board of Directors of Eye

20  Dog Foundation" and June 10, 1997 document titled "Resolution for Amending Adoption

21  Agreement By Replacement Pages"; (5) Exhibit F-4, June 7, 2002 meeting minutes; and (6)

22

23    [9]    Plaintiffs only arguments in opposition to claims one through five are that there
24  are triable issues of fact relating to the formation, funding and administration of the Plan by
    McKay.  Opposition at 10-12.
25
      [10]    Rule 56(c)(3) of the Federal Rules of Civil Procedure states the "court need
26  consider only the cited materials, but may consider other materials in the record."

27

28                                              12

1    Exhibit F-5, September 23, 2006 meeting minutes.

2         Out of these exhibits, only Exhibit F-5 was timely produced by Defendants. <u>Objection to</u>

3    <u>Brucker declaration</u>, Doc. 126-6 at 3-4; <u>see also</u> <u>McTeer declaration</u> <u>Exhibit A</u>, Doc. 126-8 at 6.[11]

4    Exhibits F1-F4 were produced on March 31, 2011, which was over three months after discovery

5    had closed. <u>Objection to Brucker declaration</u>, Doc. 126-6 at 4. Exhibit C was never produced at

6    all. <u>Id.</u>

7         Rule 37(c)(1) of the Federal Rules of Procedure states that if a party fails to provide

8    information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

9    that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

10   failure was substantially justified or is harmless. In this case, Exhibit F-3 contains documents

11   that were also produced by Plaintiffs, so Defendants' failure to timely produce Exhibit F-3 is

12   harmless. However, with respect to Exhibits C, F-1, F-2 and F-4, given how late the documents

13   were produced, and the lack of explanation by Defendants for the late disclosure, the Court

14   concludes that Defendants are prevented from relying on these documents as evidence in

15   opposition to Plaintiffs' motion for summary judgment. All references and paragraphs that rely

16   on Exhibits C, F1, F-2 and F-4 are struck from Brucker's declaration.

17        Given the limited evidence that Brucker bases his conclusion on, the Court is not

18   persuaded that Brucker's conclusion creates a triable issue of fact with respect to Plaintiffs' claim

19   for benefits. <u>See</u> <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 596 (1993)

20

---

21        [11]    On or about October 20, 2009, Plaintiffs received from Defendants nine separate
     documents pursuant to their Rule 26(a)(1) initial disclosures. <u>McTeer declaration</u> at ¶ 3, Doc.
22   126-7 at 2. Defendants never produced Supplemental Rule 26 disclosures. <u>Id.</u> at ¶ 4. A separate
     set of Requests for Production were propounded to Defendants by Plaintiffs on or about October
23   21, 2010. <u>Id.</u> at ¶ 5. Defendants never produced any documents in response to Plaintiffs'
     discovery request. <u>Id.</u> at ¶ 6. The non-expert discovery cut-off date in this case was December
24   13, 2010 and expert discovery cut-off date was December 17, 2010. <u>Scheduling order</u>, Doc. 76
     at 2. After discovery closed, on March 31, 2011, Defendants' counsel informed Plaintiffs that
25   Defendants would be producing over 1200 documents. <u>McTeer declaration</u> at ¶ 7, Doc. 126-7 at
     2.

26

27

28                                                    13

(concluding that if the basis for the expert's opinion is clearly unreliable, the district court may disregard that opinion in deciding whether a party has created a genuine issue of material fact).

With respect to whether the Plan was validly funded, Brucker states:

1.      I reviewed the Plan and Trust documents executed by Ms. McKay on April 20, 1993 (Exhibit A), and the Plan and Trust documents executed by Ms. McKay on April 26, 2004 (Exhibit B).  Under these documents, contributions to the Plan are at the discretion of the Foundation.  This means that Foundation contributions are not required under a fixed or definite formula but are determined annually by the Foundation at its discretion.

2.      Since contributions to the Plan are discretionary, the decision to make any contribution, and the amount of any contribution, are established by the Foundation.  A decision by the Foundation to make a contribution creates a Foundation liability and, therefore, the decision must be made by those individuals with authority to bind the organization.  Revenue Ruling 74-468, 1974-2 C.B. 140.

3.      Contributions made to a discretionary profit sharing plan by an officer of the sponsoring organization without Board authorization would exceed that officer's authority unless the Board delegated to such officer the authority to bind the organization without further Board approval.  Section 5210 of Corp. Code.

4.      I have requested and been provided with all resolutions of the Board of Directors of the Foundation, whether passed at a duly noticed special meeting, a regularly scheduled meeting or by action without a meeting by written consent of a majority of Board members. I also reviewed the Exhibits attached to Plaintiffs' moving papers. I did not locate any resolutions of the Board either authorizing a contribution to the Plan, or authorizing Ms. McKay to independently determine when, and in what amounts, to make contributions to the Plan without further Board involvement.

5.      I have been provided with copies of the following checks written on the Foundation's bank account and made payable to the Plan (Exhibit G):

        Check 1899 (CalFed) dated May 23, 2000       $26,756.26
        Check 2158 (CalFed) dated Feb. 22, 2001      $25,000.00
        Check 4087 (Citibank) dated April 28, 2006   $5,360.23
        Check 4093 (Citibank) dated May 8, 2006      $91,177.54

6.      My office was informed by Gwen Brown that two signatures are required on any check written on a Foundation account in the amount of $1,000 or more.  There are two signature lines on each of the above checks to accommodate two signatures.  However, only check number 1899 has two signatures, those of Ms. McKay and her sister Ruby Bell.  The other three checks were signed only by Ms. McKay.

7.      Based on the information described above, it is my opinion that, whether or not the Plan and Trust are valid, none of the contributions to the Trust by the Foundation were authorized by the Board, and Ms. McKay exceeded her authority in causing the Foundation to make such contributions.

Brucker declaration, Doc. 125-3 at 10-11.  The Court concludes that Brucker's expert testimony with respect to the funding of the Plan is also unreliable.  Brucker states that he has been provided with all resolutions of the EDF Board of Directors, but does not indicate or establish which of these resolutions is actually before the Court.  Brucker also relies on a statement by Brown that all EDF checks in the amount of $1,000 or more require two signatures.  However, Brucker does not explain whether this is an EDF policy, required by EDF's by-laws or is required by statute.  Moreover, Brucker's conclusion relies heavily on Exhibit G, which was never produced during discovery.  Objection to Brucker declaration, Doc. 126-6 at 4.  The Court therefore strikes all references and paragraphs that rely on Exhibit G in Brucker's declaration under Rule 37(c)(1).  Thus, there is no evidentiary support for Brucker's conclusion that McKay was independently determining when and how much to contribute to the Plan.  Therefore, the Court disregards Brucker's conclusion regarding the funding of the Plan as unreliable.

Finally, Brucker concludes that McKay, as trustee and beneficiary under the Plan, had a conflict of interest and breached her fiduciary duties owed to the Plan.  Brucker declaration, Doc. 125-3 at 13-15.  However, even assuming that McKay was under a conflict of interest or breached her fiduciary duties, this argument goes towards whether the Plan has a claim for breach of fiduciary duties against McKay and not whether there is a triable issue of fact with respect to Plaintiffs' claim for benefits.

Defendants have therefore failed to create a triable issue of fact on Plaintiffs' claim for benefits under ERISA § 502(a).  Accordingly, Plaintiffs' motion for summary judgment on its claim for benefits against EDF and the EDF Profit Sharing Plan is GRANTED.

B.     Breach of Fiduciary Duties

Plaintiffs move for summary judgment on their claim for breach of fiduciary duties against EDF and Brown.  ERISA § 502(a)(2) provides for suits to enforce the liability-creating provisions of ERISA § 409, concerning breaches of fiduciary duties that harm plans.  See 29

1  U.S.C. § 1132(a)(2); Larue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 251 (2008).

2  Section 409(a) provides:

3      Any person who is a fiduciary with respect to a plan who breaches any of the
        responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be
4       personally liable to make good to such plan any losses to the plan resulting from each
        such breach, and to restore to such plan any profits of such fiduciary which have been
5       made through use of assets of the plan by the fiduciary, and shall be subject to such other
        equitable or remedial relief as the court may deem appropriate, including removal of such
6       fiduciary.  A fiduciary may also be removed for a violation of section 411of this Act.

7  See 29 U.S.C. § 1109(a).  ERISA § 404(a)(1) sets forth the general duties of an ERISA fiduciary:

8      (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall
        discharge his duties with respect to a plan solely in the interest of the participants and
9       beneficiaries and-

10     (A) for the exclusive purpose of:

11         (i) providing benefits to participants and their beneficiaries; and
           (ii) defraying reasonable expenses of administering the plan;
12
        (B) with the care, skill, prudence, and diligence under the circumstances then prevailing
13      that a prudent man acting in a like capacity and familiar with such matters would use in
        the conduct of an enterprise of a like character and with like aims;
14
        (C) by diversifying the investments of the plan so as to minimize the risk of large losses,
15      unless under the circumstances it is clearly prudent not to do so; and

16      (D) in accordance with the documents and instruments governing the plan insofar as such
        documents and instruments are consistent with the provisions of this subchapter and
17      subchapter III of this chapter.

18 See 29 U.S.C. § 1104.  The Supreme Court has concluded that "although § 502(a)(2) does not

19 provide a remedy for individual injuries distinct from plan injuries, that provision does authorize

20 recovery for fiduciary breaches that impair the value of plan assets in a participant's individual

21 account."  Larue, 552 U.S. at 256.

22         1.      EDF and Brown are fiduciaries of the Plan.

23         Only plan fiduciaries may be sued for breach of fiduciary duties under ERISA §

24 502(a)(2).  Acosta v. Pac Enters., 950 F.2d 611, 617 (9th Cir. 1991).  Under ERISA, a person is a

25 fiduciary with respect to a plan to the extent he exercises any discretionary authority or

26

27

28                                      16

discretionary control over a plan's management, administration, or assets. <u>See</u> 29 U.S.C. §

1002(21)(A)(iii). This definition of a fiduciary is liberally construed. <u>Thomas, Head & Greisen</u>

<u>Emps.Trust v. Buster</u>, 24 F.3d 1114, 1117 (9th Cir. 1994).

With respect to EDF, simply being the Plan's administrator does not make EDF a

fiduciary of the Plan. <u>Pegram v. Herdrich</u>, 530 U.S. 211, 225 (2000). However, a plan

administrator "engages in a fiduciary act when making a discretionary determination about

whether a claimant is entitled to benefits under the terms of the plan documents." <u>Varity Corp. v.</u>

<u>Howe</u>, 516 U.S. 489, 511 (1996). In this case, the SPD explicitly states that EDF as plan

administrator "has the complete power, in its sole discretion, to determine all questions arising in

connection with the administration, interpretation, and application of the Plan[.]" <u>Copner</u>

<u>declaration Exhibit B</u>, Doc. 108-20 at 26. Therefore, EDF is a fiduciary of the Plan.

With respect to Brown, it is apparent that Brown was acting as a fiduciary through her

September 16, 2008 denial letter. <u>Bell declaration Exhibit B</u>, Doc. 108-15 at 5. Through the

denial letter, Brown was exercising discretion by denying Plaintiffs' claim for benefits. Plaintiffs

also submitted the Plan's 2007 Annual Return/Report whereby Brown signed the document as

the Plan's administrator. <u>McTeer declaration Exhibit A</u>, Doc. 108-4 at 28. Therefore, Brown is

also a fiduciary of the Plan.

      2.     EDF and Brown's failure to discharge their duties in accordance with the Plan
            documents violated their fiduciary duties.

In their motion, Plaintiffs contend that EDF and Brown breached their fiduciary

obligations required by ERISA. <u>Motion</u> at 9:15-16. Specifically, Plaintiffs state that:

> Defendants failed to provide Plaintiffs with a written or electronic notification of the
> PLAN'S adverse determination. [PUMF 41] Defendants did not provide Plaintiffs with
> specific reasons for the denial of the PLAN proceeds. [PUMF 42] Defendants failed to
> conduct a full and fair review before making their adverse determination. [PUMF 43] In
> fact, Defendants ceased all communication with Plaintiffs after information regarding the
> PLAN's assets was requested. [PUMF 44]

Id. at 9:16-21.

Plaintiffs have established that EDF and Brown did not follow the procedural requirements under the Plan in denying Plaintiffs' claim for benefits. While Plaintiffs contend in their motion that EDF and Brown's failure to follow these procedural requirements violates ERISA §§ 404(a)(1)(A) and (B), the Court construes Plaintiffs' claim as more appropriately brought under ERISA § 404(a)(1)(D) for failure to discharge fiduciary duties in accordance with the documents and instruments governing the Plan.[12] Thus, Plaintiffs have established that EDF and Brown breached their fiduciary duties under ERISA § 404(a)(1)(D).

       3.    Plaintiffs have not established that no genuine issue of material fact exists with respect to damages.

In order to recover for breach of fiduciary duties under ERISA, a plaintiff must establish that the fiduciary breaches have impaired the value of plan assets in a participant's individual account. Larue, 552 U.S. 248, 251 (2008). Plaintiffs' motion does not address how the value of their individual account was impaired as a result of the specific fiduciary breaches by Defendants. Accordingly, Plaintiffs' motion for summary judgment on their claim for breach of fiduciary duties is DENIED.

C.    Failure to Comply with Beneficiary's Request for Information under ERISA § 502(c)(1)

Plaintiffs move for summary judgment on their claim that Defendants are subject to fines under ERISA § 502(c)(1) because Defendants refused to provide them with information related to the Plan in violation of ERISA § 104(b)(4).

ERISA § 104(b)(4) provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining

---

[12]    The Court issues no judgment on whether EDF and Brown's conduct also violates ERISA §§ 404(a)(1)(A) and (B).

1    agreement, trust agreement, contract, or other instruments under which the plan is established or

2    operated." See 29 U.S.C. § 1024(b)(4).  The Ninth Circuit has clarified that the clause "other

3    instruments under which the plan is established or operated" refers to those "documents that

4    provide individual participants with information about the plan and benefits." Hughes Salaried

5    Retirees Action Committee v. Administrator of the Hughes Non-Bargaining Retirement Plan, 72

6    F.3d 686, 690 (9th Cir. 1995).  Thus, the documents contemplated by ERISA § 104(b)(4) are

7    those that allow "the individual participant to know exactly where he stands with respect to the

8    plan-what benefits he may be entitled to, what circumstances may preclude him from obtaining

9    benefits, what procedures he must follow to obtain benefits, and who are the persons to whom

10   the management and investment of his plan funds have been entrusted." Id.  Under ERISA §

11   502(c)(1), a plan administrator who fails to provide such information to a beneficiary within 30

12   days after the request may be fined at the court's discretion in the amount of up to $100 a day

13   from the date of such failure or refusal.  See 29 U.S.C. § 1132(c)(1).

14          In this case, on April 30, 2009, Plaintiffs' counsel requested that EDF provide a current

15   statement from Morgan Stanley detailing the total assets of the Plan and the portion of those

16   assets which are allocable to McKay's account.  Sullivan declaration Exhibit A, Doc. 108-22 at

17   4.  On May 18, 2009, Defendants' counsel indicated that no action would be taken with respect

18   to Plaintiffs' request for information.  Id. at 6.  On December 15, 2009, in Defendants' answer to

19   Plaintiffs' amended complaint, Defendants admitted that they did not provide the requested

20   documents.  Answer, Doc. 18 at 7.  Plaintiffs assert that Defendants are subject to penalties

21   beginning May 31, 2009, which is thirty days after the April 30, 2009 request, and ending on the

22   date of hearing on this motion.  Motion at 10:22-26.

23          As a preliminary matter, the Court concludes that the documents requested by Plaintiffs

24   qualify as an "other instrument" under ERISA § 104(b)(4).  The documents requested provide

25   Plaintiffs with information about exactly where they stand with respect to the Plan and what

26

27

28                                            19

benefits they are entitled to under the Plan.[13]  Since Defendants have admitted that they have not

provided the requested information, it is within the Court's discretion whether to assess penalties

for failure to provide the requested information.

        In determining whether to award penalties, courts consider whether the beneficiaries

suffered any harm or prejudice and whether the defendants acted in bad faith.  Draper v. Baker

Hughes Inc., 892 F. Supp. 1287, 1298 (E.D. Cal. 1995); Spencer v. Caterpillar, Inc. Non-

Contributory Pension Plan, No. C02-2101 SI, 2003 WL 21148467, at *6 (N.D. Cal. May 13,

2003).  "[C]ourts generally do not favor imposing a penalty where a plaintiff makes no showing

of prejudice."  McCroskey v. United Airlines, Inc., No. C 98-03273 CRB, 1999 WL 169602, at

*3 (N.D. Cal. Mar. 19, 1999) (citations omitted).  In the exercise of its discretion, the Court

concludes that it would be inappropriate to impose penalties here.  Plaintiffs have presented no

arguments in their motion that they suffered any harm or prejudice as a result of Defendants'

failure to produce the documents.  Accordingly, the Court concludes in its discretion that it is

inappropriate to impose penalties under the facts and circumstances of this case.

D.      State Law Claims

        In addition to claims brought under ERISA, Plaintiffs have also brought claims under

California law for (1) breach of contract; (2) breach of the covenant of good faith and fair

dealing; (3) fraud; (4) negligent misrepresentation; (5) violation of Business and Professions

Code § 17200; and (6) intentional infliction of emotional distress.

        On July 22, 2011, the Court ordered supplemental briefing on the issue of whether

Plaintiffs' state law claims are preempted under ERISA § 514(a).  ERISA § 514(a) preempts a

state law claim if it "relates to" an employee benefit plan.  See 29 U.S.C. § 1144(a).  In

---

[13]      In their motion, Plaintiffs specify that they made their request pursuant to ERISA
§ 104(b)(4).  See 29 U.S.C. § 1024(b)(4); motion at 10:7.  The Court notes that Plaintiffs' request
could also constitute a request for a statement of accrued benefits under ERISA § 105(a)(1).
ERISA § 105(a)(1) requires a plan administrator to furnish, upon request, a beneficiary with a
statement indicating the total benefits accrued.  See 29 U.S.C. § 1025(a)(1).

determining whether a state law claim relates to ERISA, a court must evaluate whether the state law claim "'has a connection with or reference to' employee benefit plans." Bast v. Prudential Ins. Co. of Am., 150 F.3d 1003, 1007 (9th Cir. 1998) (citation omitted).  Thus, where "the existence of [an ERISA] plan is a critical factor in establishing liability" under a state cause of action, the state law claim is preempted.  Wise v. Verizon Commc'ns, Inc., 600 F.3d 1180, 1190 (9th Cir. 2010) (citation omitted).

In their supplemental brief, Plaintiffs state that if the Court concludes "that a valid profit sharing plan did, in fact, exist in this matter, only the ERISA claims . . . would apply as the state law claims . . . are preempted." Supplemental brief, Doc. 133 at 3:2-4.  The Court agrees that all of Plaintiffs' state law claims directly relate to the ERISA Plan in question.  Accordingly, Plaintiffs' motion for summary judgment on their state law claims is DENIED.  Plaintiffs' state law claims are all preempted under ERISA § 514(a) and are therefore DISMISSED.

## CONCLUSION

IT IS HEREBY ORDERED that:

1.      Plaintiffs' motion for summary judgment on its claim for benefits under ERISA § 502(a)(1)(B) against Brown is DENIED;

2.      Plaintiffs' motion for summary judgment on its claim for benefits under ERISA § 502(a)(1)(B) against EDF and the EDF Profit Sharing Plan is GRANTED;

3.      Plaintiffs' motion for summary judgment on its claim for breach of fiduciary duties under ERISA § 502(a)(2) against EDF and Brown is DENIED;

4.      The Court will not impose penalties against Defendants under ERISA § 502(c)(1); and

5.      Plaintiffs' state law claims are DISMISSED as preempted under ERISA § 514(a).

IT IS SO ORDERED.

Dated:     August 26, 2011
_____
_____
CHIEF UNITED STATES DISTRICT JUDGE

21